DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} Appellant MacArthur W. ("Father") is the natural father of A.W. During November of 2006, Lorain County Children Services ("LCCS") filed a complaint in the Lorain County Court of Common Pleas, Juvenile Division, seeking custody of A.W., who had previously been adjudicated a dependent child. LCCS eventually filed a motion for permanent custody of A.W. Following an evidentiary hearing, the trial court granted the agency's motion and terminated Father's parental rights.
 {¶ 2} Father filed this appeal from the trial court's judgment terminating his parental rights. He argues that the trial court's judgment was not supported by the weight of the evidence. Specifically, Father argues that the trial court terminated his parental rights without considering the alternative of placing the child with her paternal aunt and without *Page 2 
providing him with enough time to work toward reunification with his child. This Court affirms.
 FACTS {¶ 3} A.W., born August 30, 1999, was removed from her mother's care along with her two half-siblings after the mother seriously injured one of the half-siblings.[1] Mother, who is not a party to this appeal, was convicted of child endangering and incarcerated as a result. Father did not reside in the same household and his contact with A.W. throughout her life had been sporadic. Father visited with A.W. only once during the pendency of this case.
 {¶ 4} On October 7, 2007, LCCS moved for permanent custody of A.W. Following a hearing on the motion, the trial court found that A.W. could not be returned to either parent's home within a reasonable time or should not be returned to either home and that permanent custody was in her best interest. Father appeals and raises one assignment of error.
 TERMINATION OF PARENTAL RIGHTS {¶ 5} Father contends that the evidence did not support the trial court's permanent custody decision. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a *Page 3 
reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99.
 {¶ 6} The trial court found that the first prong of the permanent custody test was satisfied because A.W. could not be placed with either parent within a reasonable time or should not be placed with either parent. See R.C. 2151.414(E). Specifically, the trial court found that Father: (1) abandoned A.W., R.C. 2151.414(E)(10); (2) demonstrated a lack of commitment to A.W. by failing to regularly support, visit, or communicate with her when able to do so, R.C. 2151.414(E)(4); and (3) had been repeatedly incarcerated, which affected his ability to provide care for A.W., R.C. 2151.414(E)(13). Pursuant to R.C. 2151.414(E), any one of these findings would have supported the trial court's judgment. This Court will review the evidence supporting each finding, however, because the findings were also relevant to the trial court's best interest determination.
 {¶ 7} LCCS presented evidence that Father had abandoned A.W. and that he otherwise demonstrated a lack of commitment to her. A presumption of abandonment arises under R.C. 2151.011(C) when a parent fails to have contact with the child for more than 90 days. At the time this case began, Father's whereabouts were unknown and he had lost contact with A.W. After LCCS was able to locate Father, it arranged for visitation between Father and A.W. Father visited with A.W. once, in January 2007, but did not visit with her again during the pendency of this case. For almost an entire year after the one visit, Father had no contact with A.W. Although Father was incarcerated for half of that year, he could have attempted to contact A.W. through letters or telephone calls, as she was then eight *Page 4 
years old, but he did not. Evidence that Father had no contact with A.W. for nearly one year was more than sufficient to establish the presumption of abandonment. Father presented no evidence to rebut the presumption.
 {¶ 8} Moreover, prior to the commencement of this case, Father had demonstrated a lack of commitment to A.W. by having little contact with her throughout most of her life. During 2000, Father visited A.W. and even cared for her for approximately one month while her mother was incarcerated, but he lost contact with A.W. shortly afterward because he was convicted and incarcerated for six months. After his release from prison, Father moved to Florida to look for work and had no contact with A.W. for another two years.
 {¶ 9} The trial court also had ample evidence before it that Father's repeated incarcerations prevented him from providing care for A.W. Father has been convicted of various criminal offenses during his adult life and has served two periods of incarceration during A.W.'s lifetime. On June 8, 2004, Father was convicted of attempted burglary and aggravated menacing. He was incarcerated for a six-month period and completely lost contact with A.W. and her mother. On July 20, 2007, during the pendency of this case, Father was convicted of attempted robbery, attempted burglary, intimidation, and criminal damaging. He was still serving a one-year period of incarceration at the time of the permanent custody hearing.
 {¶ 10} The trial court reasonably found that that LCCS had presented clear and convincing evidence to establish the existence of the circumstances enumerated in R.C. 2151.414(E)(4), R.C. 2151.414(E)(10), and R.C. 2151.414(E)(13). Given the trial court's determination that each of these circumstances existed, it entered a finding that A.W. could *Page 5 
not be placed with Father within a reasonable time or should not be placed with him. See R.C. 2151.414(E).
 {¶ 11} Father contends that, rather than finding that A.W. could not be placed in his care within a reasonable time, the trial court instead should have granted an extension of temporary custody to allow him more time to work toward reunification with A.W. Despite Father's suggestion to the contrary, the trial court had no discretion to make an alternate finding. R.C. 2151.414(E) provides that if the court finds that one of the enumerated factors exists, it "shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent[.]" (Emphasis added.)
 {¶ 12} After the trial court found that A.W. could not be placed with either parent due to one or more of the factors under R.C. 2151.414(E), it was required to determine whether permanent custody was in the best interest of A.W. When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
 "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D)(1)-(5). *Page 6 
 {¶ 13} This Court will discuss the first and fifth best interest factors together because they are closely related. As explained above, the trial court found that the circumstances set forth in R.C. 2151.414(E)(10) existed in this case because Father had abandoned A.W. Because Father's abandonment of A.W. was indicative of his lack of interaction and interrelationship with her, a combined discussion of these factors is in order. See In re M.R., 9th Dist. No. 23033,2006-Ohio-2558, at ¶ 14.
 {¶ 14} The trial court correctly found that Father had abandoned A.W. and that his interaction with her throughout her eight-year life had been sporadic and limited. He had little contact with her for the several years before this case began and had only one visit with her during the one-year duration of this case. Although Father was incarcerated repeatedly, which affected his ability to have direct contact with her, he did not send letters or make calls to her while incarcerated. Father and A.W. essentially had no parent-child relationship.
 {¶ 15} On the other hand, A.W. had been living in the same foster home since the beginning of this case and her two half-siblings had been living there with her for most of that time. The agency had placed all three children there in an effort to keep A.W. and her half-siblings together. The evidence demonstrated that A.W. was bonded to the foster parents and her two half-siblings and the foster parents had expressed a desire to adopt all three children.
 {¶ 16} A.W., who was eight years old at the time of the permanent custody hearing, had expressed her desire to stay in the home of the foster family. The trial court further relied on the recommendation of the guardian ad litem, noting that the guardian ad litem opined that permanent custody was in the best interest of A.W. *Page 7 
 {¶ 17} The trial court further found that A.W. was in need of a legally secure permanent placement that could only be achieved by placing A.W. in the permanent custody of LCCS. Neither parent was able to provide A.W. with a permanent home at that time and LCCS had been unable to locate any suitable relatives.
 {¶ 18} Although Father maintains that LCCS failed to rule out his sister Denise as a possible permanent placement for A.W., the record demonstrates otherwise. LCCS presented evidence that it investigated Father's sister Denise, and even conducted a home study, but found that she could not provide a suitable permanent placement for A.W. In addition to concerns that A.W. did not really know Denise and that Denise had been investigated twice due to allegations of physical abuse of other children, LCCS wanted to keep A.W. together with her two half-siblings, who are not related to Denise. A.W. is strongly bonded to her half-siblings and LCCS had been able to place the three children together in the same foster home. The foster parents intended to adopt all three children and keep them together. Where the strongest bond the child has had is with her siblings, separating them would generally not be in their best interest. In re A.C., 9th Dist. Nos. 02CA0053, 02CA0054, 02CA0055, 2003-Ohio-2714, at ¶ 44. Moreover, A.W. had indicated to one of her caseworkers that she would prefer to stay with the foster family than to live with her Aunt Denise. Father conceded in his testimony that A.W. has had very little interaction with her Aunt Denise.
 {¶ 19} Given the evidence before the trial court, it reasonably found that permanent custody was in A.W.'s best interest. The assignment of error is overruled. *Page 8 
 CONCLUSION {¶ 20} This Court overrules Father's assignment of error. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
CARR, J. MOORE, P. J. CONCUR.
[1] The half-siblings are the children of A.W.'s mother and another father. *Page 1