

**In re S.B.; A.B., Appellant.**

[Cite as *In re S.B.*, 183 Ohio App.3d 300, 2009-Ohio-3619.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 09AP–15.

Decided July 23, 2009.

Victoria M. Booth, for S.B.

Robert J. McClaren, for Franklin County Children Services.

Christopher Heckert, Guardian ad Litem.

William T. Cramer, for appellant.

BRYANT, Judge.

{¶ 1} Appellant, A.B., father of S.B., appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting the permanent-custody motion of appellee, Franklin County Children Services ("FCCS"), and terminating appellant's parental rights regarding S.B. ("the child"). Because (1) the trial court did not commit reversible error in allowing the guardian ad litem, who served originally in the dual capacity as counsel and guardian ad litem, to continue to serve as guardian ad litem for the child and her siblings and to withdraw as attorney for the child, (2) the child's attorney did not render ineffective assistance of counsel, and (3) the trial court did not err in concluding that appellant had abandoned the child, we affirm.

## I. Procedural History

{¶ 2} On April 23, 2007, the child and her brother, C.P., were removed from their mother's home. FCCS filed a complaint on April 24, 2007, alleging that the

child was a neglected child, a dependent child, or both. The same day, a magistrate entered an emergency-care order placing the child in the temporary care of FCCS with full authority to place her in emergency or foster care. The trial court appointed a guardian ad litem for the child, as well as separate attorneys for both the child's mother and for appellant.

{¶ 3} FCCS originally was involved with the child in 2006 when her absence from school prompted FCCS's intervention. The child's absenteeism was resolved by the end of that year, so FCCS terminated its involvement with the family. In 2007, the child's absenteeism once again became a problem. According to FCCS's complaint, members of the Columbus Police Department went to the family's home on April 23, 2007, to complete a well-being check and found the child inside the home, C.P. outside on the porch with an adult relative, the child's mother inside sleeping, and the house in an "extremely unsafe and unsanitary" condition.

{¶ 4} Pictures taken of the home revealed "miscellaneous trash, rotten food, piles of dirty laundry and feces on the floor." The kitchen counters, table, and sink in the home "were covered with rotten food, dirty dishes and mold. The inside of the refrigerator contained mold and spoiled food," and no food was available for the children to eat. "The bathroom sink, bathtub, toilet, walls and floor were 'black,'" covered in mold and feces. The home had no running water, and the upstairs windows were broken.

{¶ 5} At the time the children were removed from the home, appellant was incarcerated at Chillicothe Correctional Institution, having pleaded guilty to and been convicted of aggravated arson and attempted felonious assault on March 20, 2001; he is due to be released in July 2010. As of April 23, 2007, appellant had had no contact with the child since his incarceration. The child's mother gave birth to a third child in July 2007 and abandoned the baby at the hospital; the baby ultimately was placed with the child and C.P. in foster care.

{¶ 6} The magistrate conducted a hearing on July 16, 2007, on FCCS's complaint. At the request of the prosecution, the magistrate dismissed the claim of neglect. Based on the uncontested facts in the complaint and representations made to the magistrate, the magistrate concluded that the child was a dependent child. Accordingly, the magistrate determined that the child should be committed temporarily to the custody of FCCS; the trial court adopted the magistrate's decision the same day. Because the child's mother did not appear for the hearing, the motion of the mother's attorney to withdraw was granted.

{¶ 7} On January 31, 2008, FCCS filed a motion for permanent custody, asserting that (1) the child could not be placed with either of the child's parents within a reasonable time or should not be placed with them pursuant to R.C. 2151.414(B)(1)(a) and (2) the child was abandoned pursuant to R.C.

2151.414(B)(1)(b). On November 3, 4, and 5, the trial court conducted a hearing on FCCS's motion, issuing a decision and judgment entry on December 10, 2008. In its decision, the trial court concluded that (1) appellant had abandoned the child under R.C. 2151.414(B)(1)(b) and (2) the child's best interest was served in granting permanent custody to FCCS so that the foster mother, with whom the child was well-adjusted and living with her siblings, could pursue adoption.

## II. Assignments of Error

{¶ 8} Appellant appeals, assigning three errors:

Assignment of error number one: S.B. was denied her due process right to counsel when her attorney and guardian ad litem (GAL) was permitted to continue serving as GAL and advocate against her wishes after a conflict arose between her wishes and the GAL's recommendations.

Assignment of error number two: S.B. was denied the effective assistance of counsel because her new counsel failed to advocate for her wishes.

Assignment of error number three: The trial court's finding of abandonment is not supported by clear and convincing evidence.

## III. First Assignment of Error—Dual capacity guardian ad litem and attorney

{¶ 9} Appellant's first assignment of error asserts that the trial court denied the child her right to counsel when it allowed the attorney serving as both guardian ad litem and attorney for the child to withdraw as attorney and continue to serve as guardian ad litem. Appellant contends that the reverse should have occurred: the trial court should have compelled the guardian ad litem to continue to serve as attorney and to withdraw as guardian ad litem. The court then should have appointed a new guardian ad litem for the child.

{¶ 10} Appellant's contentions arise out of a hearing the trial court conducted on September 15, 2008. At the hearing, separate counsel appeared on behalf of FCCS and appellant; an attorney serving both as guardian ad litem for the child and her siblings and as the child's attorney appeared on the child's behalf. At the hearing, the guardian ad litem indicated that he had met with the child a number of times and discussed the permanent-custody motion FCCS filed.

{¶ 11} He stated that when he discussed the matter using the term "adoption," the child seemed to dislike the word. Accordingly, if he inquired whether she wanted to be adopted, the child would respond that she did not. By contrast, if he inquired about the conditions that would result if the motion were granted, the child was "okay with that." As the guardian ad litem clarified, "She likes the foster home that she is residing in. She wants to remain there, but she does not want to be adopted." Although the guardian ad litem reported the child's

indicated desire to continue to visit with her father, he also stated that "she does not believe that she will be able to reside with her father." Indeed, he reported that when he explained that her foster parent would not allow her to have a relationship with her father if she resided permanently in the foster home, "she [was] okay with that."

{¶ 12} The guardian ad litem explained that the reported circumstances placed him "in a difficult position as guardian and attorney * * * because the answers that I received when posed a certain fashion indicate that there's not a conflict over the role." By contrast, if he asked "the straight questions as the motions are written with PCC, permanent custody, you're removing all parental rights, you have the ability to be placed up for adoption, do you want that, her answer is no."

{¶ 13} The trial court questioned whether an open adoption would be possible, with the foster parents allowing the child to see appellant after the adoption. Although counsel for FCCS stated that the agency was open to that idea, she correctly conceded that she could not guarantee that result. Given the circumstances, the trial court asked, "[S]o do you think I ought to appoint an attorney for her?" Counsel for appellant indicated, "I—I believe that would be best. * * * Yes." The trial court acknowledged that it made sense to allow the guardian ad litem to continue in that capacity since he also was guardian ad litem for the child's siblings, so the court asked whether anyone objected to the court doing it that way. Appellant's attorney stated, "I don't think I have a problem with that." In response to the trial court's comment about waiving error, the guardian ad litem stated, "[W]aiving your error"; counsel for appellant stated, "[W]aive error." Accordingly, the trial court agreed to appoint new counsel for the child and to allow the guardian ad litem to continue to serve in that capacity for the child and her siblings.

{¶ 14} As appellant properly notes, the child has a due-process right to counsel under R.C. 2151.352. *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110, ¶ 29. R.C. 2151.281(H) and Juv.R. 4(C)(2) allow the trial court to appoint a single attorney to serve as both guardian ad litem and attorney for the child. Nonetheless, "[T]he duty of a lawyer to his client and the duty of a guardian ad litem to his ward are not always identical and, in fact, may conflict." *In re Baby Girl Baxter* (1985), 17 Ohio St.3d 229, 232, 17 OBR 469, 479 N.E.2d 257. The conflict typically arises when the guardian ad litem's determination of the child's best interest differs from the child's wishes. Id. Appellant contends that in such circumstances, "there is only one lawful remedy: A new [guardian ad litem] must be appointed, not a new attorney." See *In re Baby Girl Baxter* at 232, 17 OBR 469, 479 N.E.2d 257 (noting that "[i]f the attorney feels there is a conflict between his role as attorney and his role as guardian, he should petition

the court for an order allowing him to withdraw as guardian," and "[t]he court should not hesitate to grant such request"). Id.

{¶ 15} Appellant's argument suggests two interrelated issues: standing and waiver. This court's opinion in *In re Johnson*, 10th Dist. No. 03AP–1254, 2004-Ohio-3886, 2004 WL 1631756, appeal denied, 103 Ohio St.3d 1465, 2004-Ohio-5056, 815 N.E.2d 680, dealt with similar issues and is instructive here. The appellant in *Johnson* asserted that the trial court erred when it did not provide independent counsel for her children. In addressing whether the appellant there had standing to raise the issue, *Johnson* cited *In re Smith* (1991), 77 Ohio App.3d 1, 13, 601 N.E.2d 45, which held that "[a]n appealing party may complain of an error committed against a non-appealing party when the error is prejudicial to the rights of the appellant." Id.

{¶ 16} In *Smith*, both of the parents, appellants in the case, and at least five of the children sought reunification of the family. On those facts, *Smith* concluded, "[A]ny error prejudicial to the children's interest in reunification is similarly prejudicial to the parents' interest," giving the parents standing to assert error committed against the children. Id.; see also *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110, ¶ 25 (recognizing a dichotomy in concluding that "when the interests of parent and child are aligned a parent has standing to raise the child's deprivation of counsel as an issue on appeal" but "at the same time finding that the parent's attorney is unable to adequately represent the interests of the child").

{¶ 17} Relying on the principle articulated in *Smith*, 77 Ohio App.3d 1, 601 N.E.2d 45, the court in *Johnson* noted that although the appellant mother in *Johnson* desired reunification, both children expressed a desire to be adopted. As a result, *Johnson* concluded, "[T]he interests of the appellant parent and [the children] were not aligned. Accordingly, it does not appear that appellant has standing to raise as error, in this appeal, the issue of deprivation of counsel for the children." 2004-Ohio-3886, 2004 WL 1631756, ¶ 13.

{¶ 18} Similarly, here, appellant's standing is questionable. Even at the time of the September hearing, the alignment of appellant's and the child's interests was dubious. The child appeared to recoil from the word "adoption," and she refused to refer to her foster mother as her mother until parental rights had been terminated. Nonetheless, when the concepts were explained to her, the child, who had some recognized developmental delay in learning abilities, agreed that she wanted to remain with her foster mother and her siblings.

{¶ 19} By the time the court conducted a trial on FCCS's permanent-custody motion in November 2008, the guardian ad litem testified that the child "will verbally indicate a desire to stay with her siblings. She will on her own. She will verbally indicate a desire to stay with [the foster mother] on her own." By

contrast, she had to be asked about appellant to evoke an opinion and then indicated only "a desire for the ongoing communication." When asked, the child placed her relationship with her siblings and her staying in the foster home as equally important and as more significant than continued communication with appellant.

{¶ 20} Corroborating that testimony, the FCCS caseworker, Kristina DiCarlo, testified that the child stated that she wanted to stay at the foster home forever and on two occasions stated that she wanted to be adopted. When they discussed what that entailed, the child responded that she wanted her foster mother to be her mother and liked the idea of being able to call someone mother. She also stated that she wanted to be with her brothers, she felt safe and well taken care of in the foster home, and she liked it very much.

{¶ 21} Because appellant's interest in seeking to maintain parental rights diverges from the child's expressed desire, appellant does not appear to have standing to raise as error the manner in which the trial court handled the dual roles of the guardian ad litem and attorney for the child. Even if appellant had standing to assert error, appellant waived it. *Johnson*, 2004-Ohio-3886, 2004 WL 1631756.

{¶ 22} The attorney appointed to represent the interests of the children in *Johnson* withdrew on the second day of trial. The trial court asked appellant's counsel in that case to note any objection to the voluntary withdrawal and "the 'non-appointment of anyone to replace her for the duration of [the] trial.'" Id. at ¶ 16. Appellant's trial counsel neither stated an objection nor objected to the procedure the trial court outlined if circumstances required appointment of counsel later in the proceedings. Noting the waiver of all but plain error, this court in *Johnson* stated that under the circumstances of the case, it was "not a case that warrants the application of the plain error doctrine, especially considering the fact that the interests of the children were not aligned with the appellant mother but were consistent with the guardian ad litem." Id. at ¶ 17. As the court concluded, "[A]n application of the doctrine is not needed to prevent a miscarriage of justice." Id.

{¶ 23} Similarly, here, we are hard-pressed to find plain error where appellant's counsel faced this particular issue in the trial court and not only failed to object but affirmatively waived any error. In addition to the nonalignment of the child's and appellant's interests that also is present here, the result is even more compelling because, unlike the facts in *Johnson*, the trial court here appointed new counsel for the child, so the child was not without counsel during the trial. Lastly, and significantly, the subsequently appointed counsel for the child did not object to the proceedings that allowed the guardian ad litem to remain in that role and withdraw as counsel. Thus, to the extent that appellant contends that

he cannot waive error on behalf of the child, the guardian ad litem waived error at the September hearing, and the newly appointed counsel did not object at the November trial.

{¶ 24} Although appellant relies heavily on *In re Moore*, 158 Ohio App.3d 679, 2004-Ohio-4544, 821 N.E.2d 1039, *Moore* is distinguishable on at least two grounds. *Moore* addressed whether the child was entitled to counsel; here, counsel represented the child at all times. Moreover, *Moore* did not involve the affirmative waiver present in this case. While the facts of this case may be unique, we discern no reversible error in the manner the trial court handled the issue regarding the guardian ad litem during the September 2008 hearing. Appellant's first assignment of error is overruled.

## IV. Second Assignment of Error—Ineffective assistance of counsel

{¶ 25} Appellant's second assignment of error asserts that the child's newly appointed counsel failed to advocate her wishes. "[T]he two-part test for ineffective assistance of counsel used in criminal cases, announced in *Strickland* [*v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674] * * * is equally applicable in actions by the state to force the permanent, involuntary termination of parental rights." *Jones v. Lucas Cty. Children Servs. Bd.* (1988), 46 Ohio App.3d 85, 86, 546 N.E.2d 471. *Strickland* requires that appellant first show that counsel's performance was deficient. To meet that requirement, appellant must show that the child's attorney made errors so serious "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. In addition, appellant must show that counsel's deficient performance prejudiced the child's case. To meet the second requirement, appellant must show that counsel's errors "were so serious as to deprive [the child] of a fair trial, a trial whose result is reliable." Id. In effect, appellant must show that there is a "reasonable probability" that but for counsel's errors, the result of the trial would have been different. Id. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 26} Even if we assume that appellant has standing to raise the issue of counsel's effectiveness, his argument is not persuasive. Contrary to appellant's contentions, the child's attorney advocated in accordance with the child's wishes. While the child initially expressed a desire to remain with her biological mother, she was told that living with her biological mother was not a possibility. Assimilating that information, the child eventually moved to the position represented in the caseworker's testimony, stating on two occasions that she wanted to stay in the foster home forever and wanted to be adopted. When the caseworker and the child discussed what adoption entailed, the child stated that she wanted

the foster mother to be her mother, liked the idea of being able to call someone mother, and wanted to remain with her brothers.

{¶ 27} Appellant, however, insists that the guardian ad litem's testimony reflects the child's desire to remain with her father. The record does not support appellant's contentions. Although the guardian ad litem testified to the child's difficulty with certain terminology, the end result that the child desired remained the same: to stay with her foster mother and her siblings. Her desire to continue to communicate with appellant does not undermine that conclusion, as the child never expressed a desire to live with her father. Even her interaction with appellant belies appellant's contentions because, though appropriate, it lacked emotion. Indeed, she discussed him only when she was asked about him. Were any doubt to exist about the child's preferences, even the guardian ad litem testified that continued communication with her father was less significant to her than remaining with her foster mother and her brothers.

{¶ 28} Because the child's attorney advocated in accord with the child's wishes, she was not ineffective. Appellant's second assignment of error is overruled.

## V. Third Assignment of Error—Abandonment

{¶ 29} Appellant's third assignment of error does not contest the trial court's conclusion that granting FCCS's motion is in the best interest of the child. Rather, appellant contends that the trial court erred in concluding that he had abandoned the child. As appellant correctly asserts, the right to rear a child is a basic and essential civil right. *In re Hayes* (1997), 79 Ohio St.3d 46, 679 N.E.2d 680. A parent must be given every procedural and substantive protection the law allows prior to terminating that parent's rights to the child. Id. Due process includes a hearing upon adequate notice, assistance of counsel, and, under most circumstances, the right to be present at the hearing. *In re Thompson* (Apr. 26, 2001), 10th Dist. No. 00AP–1358, 2001 WL 424044.

{¶ 30} In order to terminate appellant's rights, FCCS was required to demonstrate by clear and convincing evidence that (1) one of the four factors enumerated in R.C. 2151.414(B)(1) applies and (2) termination of parental rights is in the child's best interests. *In re Gomer*, 3d Dist. No. 16–03–19, 2004-Ohio-1723, 2004 WL 722978. Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. *In re Abram*, 10th Dist. No. 04AP–220, 2004-Ohio-5435, 2004 WL 2283938. It does not mean that the evidence must be clear and unequivocal and does not require proof beyond a reasonable doubt. Id.

{¶ 31} On appellate review, permanent-custody motions supported by the requisite evidence going to all the essential elements of the case will not be reversed as against the manifest weight of the evidence. *In re Brown*, 10th Dist. No. 03AP–969, 2004-Ohio-3314, 2004 WL 1405357, ¶ 11, citing *In re Brofford* (1992), 83 Ohio App.3d 869, 615 N.E.2d 1120; *Abram*, 2004-Ohio-5435, 2004 WL 2283938. Further, in determining whether a judgment is against the manifest weight of the evidence, the reviewing court is guided by the presumption that the findings of the trial court are correct. *Brofford*, citing *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. at 80, 10 O.B.R. 408, 461 N.E.2d 1273; *Abram*, 2004-Ohio-5435, 2004 WL 2283938.

{¶ 32} R.C. 2151.414(B) provides that a court may grant permanent custody of a child to the movant if, as relevant here, one of two circumstances exist. First, the agency must prove that under R.C. 2151.414(B)(1)(a), "[t]he child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period," and the child "cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." Alternatively, the agency must prove that under R.C. 2151.414(B)(1)(b), the child is abandoned. Pursuant to R.C. 2151.011(C), a child is presumed abandoned if the parents "failed to visit or maintain contact with the child for more than ninety days, regardless of whether [they] resume contact with the child after the period of ninety days."

{¶ 33} Because the child's mother was absent from June 2007, the trial court found that she had abandoned the child. The trial court also determined that appellant had abandoned the child. In explaining its conclusion, the trial court observed that appellant has been incarcerated since the child was two years old, and for seven of the eight years he "never visited or contacted the child, or even had her placed on his visitor's list." Although the trial court noted that R.C. 2151.011(C) creates only a presumption of abandonment, the trial court found "no exception to the presumption when a parent is incarcerated and contact is renewed. Indeed, case law supports its application to incarcerated parents who at a later period in incarceration renew contact with a child. [*In re Wright*, 5th Dist. No. 2003CA00347, 2004-Ohio-1094, 2004 WL 434036, ¶ 19–20.]"

{¶ 34} Specifically applying *Wright*, the trial court pointed out that the appellant in *Wright* resumed contact with his son when the appellant was released to a halfway house after a four-month absence. Here, appellant had no contact with the child for seven years, even though they visited at the prison nine

or ten times after FCCS became involved in 2007. As the trial court appropriately observed, "Visits and phone calls began only in the past year, when FCCS arranged them. Paternity was established only after the court ordered DNA testing a few months ago." Given those facts, the court determined that appellant did not rebut the presumption.

{¶ 35} The trial court did not err in so concluding. Even though FCCS was involved with the child as early as 2006 due to the child's absenteeism, appellant had no contact with the child until November 2007. Appellant posited a number of excuses, including the biological mother's refusal to bring the child to the prison for visitation, the alleged unresponsiveness of FCCS personnel, and the absence of the child's name from his visitation list. The bulk of appellant's excuses, however, are related to his failure to establish paternity earlier in the child's life and to seek a visitation order that would have allowed the contact necessary to prevent a finding of abandonment. Given the substantial amount of time during which appellant lacked all contact with or support of the child, the trial court did not err in concluding that appellant failed to rebut the presumption set forth in R.C. 2151.011(C). See *In re A.W.*, 9th Dist. No. 08CA009366, 2009-Ohio-1827, 2009 WL 1035067.

{¶ 36} Appellant's third assignment of error is overruled.

{¶ 37} Having overruled all three of appellant's assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

BROWN and TYACK, JJ., concur.