[Cite as *In re L.M.*, 2017-Ohio-610.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re L.M.

Court of Appeals No. L-16-1212

Trial Court No. JC 15251019

**DECISION AND JUDGMENT**

Decided:  February 17, 2017

* * * * *

Laurel A. Kendall, for appellant.

Shelby J. Cully, for appellee.

* * * * *

**SINGER, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, terminating the parental rights of appellant, T.M., the father of L.M., and granting permanent custody of L.M. to appellee, Lucas County Children Services.  For the reasons that follow, we affirm.

**{¶ 2}** Appellant is the legal father of L.M., who was born in July 2015. T.P. is the biological mother of L.M. T.P. is not a party to this appeal.

**{¶ 3}** On October 21, 2015, a complaint alleging dependency and neglect was filed regarding L.M. That same day, a shelter care hearing was held and appellee was awarded interim temporary custody of L.M. Neither parent attended that hearing.

**{¶ 4}** On April 5, 2016, appellee filed a motion for permanent custody of L.M. The matter was heard before the court on August 15, 2016, and two days later the court announced its decision, awarding permanent custody of L.M. to appellee. On September 2, 2016, in a judgment entry, the court granted permanent custody of L.M. to appellee. Appellant appealed and set forth two assignments of error:

I. The trial court committed reversible error by finding that the Lucas County Children Services agency had made reasonable efforts to reunify the family when the permanent custody trial was held ten months after the removal, when the child had not been in the custody of the agency for twelve of the previous twenty-two months, and when father had demonstrated progress with his sobriety, and when he had been offered case plan services before the child was born, but not afterward.

II. The trial court committed reversible error by finding the presumption of abandonment of the child by father was not rebutted by the facts of the case.

2.

**Background**

{¶ 5} Appellee has been involved with appellant and T.P. since before L.M.'s birth. Appellee started working with T.P. and her child, L.M.'s half-sibling, in 2012, and then again in December 2014. Appellee started working with appellant in April 2015. Appellee removed L.M.'s half-sibling from T.P.'s care in December 2014, due to concerns with the home, which was in a deplorable condition, medical neglect of the half-sibling and T.P.'s mental health. At that time, T.P. was pregnant with L.M. and was living with appellant. T.P. and appellant were offered case plan services and sufficiently completed those services such that when L.M. was born, in July 2015, T.P. and appellant took L.M. home with them.

{¶ 6} On September 10, 2015, a caseworker for appellee requested a drug screen from appellant; he failed to comply. Later that month, appellee received numerous reports that T.P. and appellant were abusing drugs. From that time on, appellee had little cooperation from appellant; appellant failed to comply with five requested drug screens.

{¶ 7} On October 20, 2015, appellee held a meeting to discuss the safety of L.M. T.P. and appellant were notified of the meeting but did not attend. At the meeting, appellee decided to request an ex parte order of temporary custody of L.M. L.M. was then taken into appellee's custody.

{¶ 8} On October 21, 2015, the shelter care hearing was held and although T.P. and appellant were notified of the hearing, they did not attend. The record shows T.P., appellant and L.M. had been living with appellant's grandmother during which time T.P. and appellant stole the grandmother's television, Kindle and computer, as well as $1,400

3.

from the grandmother's bank account. In addition, appellant's grandmother had been the primary caretaker for L.M. Appellee explored placing L.M. with relatives, but there were no willing or appropriate relatives available. Appellee was awarded interim temporary custody of L.M. and L.M. was placed in a foster home, where she remains. The foster family is bonded with L.M. and has expressed an interest in adopting her.

## Permanent Custody Hearing

{¶ 9} Christina DeSilvis, a caseworker for appellee, testified she started working with T.P., L.M.'s mother, in December 2014, prior to L.M.'s birth. At that time, there were dependency and neglect issues concerning L.M.'s half-sibling, involving deplorable conditions in T.P.'s home and the medical neglect of the half-sibling. The half-sibling was placed in the legal custody of her father, who is not appellant, in May 2015.

{¶ 10} DeSilvis testified appellant was assessed for case plan services when T.P. was pregnant with L.M. At that time, he was on probation for drug related charges so he was asked to undergo a drug test, the result of which was negative. Appellant also completed an assessment at Central Access and was referred for a relapse prevention program. Once at that program, it was determined he did not need the service.

{¶ 11} In September 2015, another drug screen was requested of appellant, but he did not comply. DeSilvis received reports that both parents were doing drugs, so drug screens were requested but appellant did not comply. There were also reports that the parents were exploiting appellant's grandmother by stealing from her in order to acquire money for drugs. In October 2015, L.M. was removed from the home. Thereafter,

4.

appellant and T.P. were evicted from the grandmother's home. In November 2015, appellant had a mental health admission in the hospital.

{¶ 12} DeSilvis had very little contact with appellant after L.M. was removed from the home. Appellant did not appear for office visits nor did he contact DeSilvis for visitation with L.M. Appellant did leave a voicemail message for DeSilvis when he was at a sober living program, but when she attempted to call him back, he had left the program.

{¶ 13} In January 2016, appellant was charged with several felonies. Appellant resolved his criminal matters, and in February 2016, was sentenced and sent to CCNO, then to Correctional Treatment Facility ("CTF"). Typical agency procedure when a parent is incarcerated is to remove the parent from the case plan because the parent is unavailable to participate in services. DeSilvis noted, however, appellant "had an opportunity to engage in services prior to his sentencing on his criminal matters and did nothing in that period of time."

{¶ 14} In May 2016, appellant, through his CTF caseworker, contacted DeSilvis. DeSilvis spoke with appellant on the phone and he inquired about the status of the case.

{¶ 15} DeSilvis, on behalf of appellee, requested permanent custody of L.M. be awarded to appellee, as that would be in L.M.'s best interest. DeSilvis observed since appellant had not seen L.M. since October 2015, his lack of bond with the child was a concern.

{¶ 16} Carolyn Kay testified she was assigned as the court appointed special advocate ("CASA") for L.M.'s half-sibling when the half-sibling was removed from

5.

T.P.'s home. At that time, Kay met appellant. Kay was then assigned to be L.M.'s CASA when L.M. was removed from the home. Kay spoke with appellant twice since L.M.'s removal.

{¶ 17} Kay observed L.M. with the foster family and L.M. is thriving. Kay undertook an independent investigation and prepared a report, which was filed with the court. Kay recommended permanent custody of L.M. be awarded to appellee, as it was in L.M.'s best interest. Due to lack of contact, there is no bonding between L.M. and the parents, and appellant has not seen L.M. since she was removed from the home.

### Trial Court's Decision

{¶ 18} In its September 2, 2016 judgment entry, the trial court noted, as it relates to appellant, that he worked with and cooperated with appellee's caseworker while T.P. was pregnant with L.M. However, following L.M.'s removal, appellant did not visit L.M., nor did he contact the caseworker to participate in services or inform the caseworker of his location until seven months after L.M.'s removal. At the time of trial, appellant was incarcerated and was not available to care for L.M.

{¶ 19} The court found, pursuant to R.C. 2151.414(B)(1)(a), L.M. could not be placed with either parent within a reasonable period of time. The court further found by clear and convincing evidence, pursuant to R.C. 2151.414(D)(1), it was in L.M.'s best interest to grant permanent custody to appellee.

{¶ 20} The court observed appellee filed a complaint in dependency and neglect due to concerns with the parents' substance abuse, lack of housing and criminal activity,

6.

and temporary custody of L.M. was granted to appellee. The court found it was not in L.M.'s best interest to grant an extension of appellee's temporary custody of L.M.

{¶ 21} The court found, pursuant to R.C. 2151.414(E)(1), despite reasonable case planning and diligent efforts by appellee, the parents failed to substantially remedy the conditions which caused L.M.'s removal. The court further found, pursuant to R.C. 2151.414(E)(4), the parents demonstrated a lack of commitment towards L.M. by failing to regularly support, visit or communicate with L.M. when able to do so. The court also found, pursuant to R.C. 2151.414(E)(10), the parents legally abandoned L.M. by failing to have contact for 90 days.

{¶ 22} The court found L.M.'s parents could not meet the needs of the child for a legally secure permanent placement because of the parents' significant chemical dependency, incarceration and commitments to the state.

### The Appeal
### Standard - Permanent Custody

{¶ 23} A trial court's decision in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re AndyJones*, 10th Dist. Franklin Nos. 03AP-1167 and 03AP-1231, 2004-Ohio-3312, ¶ 28. The factual findings of a trial court are presumed correct since, as the trier of fact, the court is in the best position to weigh the evidence and evaluate the witnesses' testimony. *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Furthermore, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." *Karches*

7.

*v. Cincinnati*, 38 Ohio St.3d 12, 19, 526 N.E.2d 1350 (1988). Hence, a judgment supported by some competent, credible evidence going to all essential elements of the case is not against the manifest weight of the evidence. *Id.*; *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶ 24} The juvenile court may grant permanent custody of a child to a children services agency if the court finds, by clear and convincing evidence: (1) the existence of at least one of the four factors set forth in R.C. 2151.414(B)(1)(a) through (d), and (2) the child's best interest is served by granting permanent custody to the agency. *In re M.B.*, 10th Dist. Franklin No. 04AP755, 2005-Ohio-986, ¶ 6. Clear and convincing evidence requires proof which "produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 25} Appellant's second assignment of error will be addressed first.

## Second Assignment of Error

{¶ 26} Appellant argues we should find he rebutted the presumption that he abandoned L.M. due to his effort to contact appellee while he was in treatment at CTF. Appellant asserts after L.M. was removed from the home, he was hospitalized, in November 2015, for mental health and substance abuse issues. Then, he was indicted and arraigned, in January 2016, and remained in jail until his sentencing. Appellant claims he was unable to visit L.M. due to "the circumstances he was in" and it was not possible for him to contact appellee until he was at CTF and making progress with his sobriety. Appellant contends, in return, appellee made no effort to contact him.

8.

{¶ 27} R.C. 2151.011(C) reads as follows:

For the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days.

{¶ 28} This provision creates a presumption of abandonment, which may be rebutted. *In re S.B.*, 183 Ohio App.3d 300, 2009-Ohio-3619, 916 N.E.2d 1110, ¶ 33 (10th Dist.).

{¶ 29} Here, the record shows L.M. was removed from the home in late October 2015, and thereafter, appellant never visited his child. At the time of the permanent custody hearing, appellant had not seen L.M. in almost ten months. This evidence was sufficient to support a presumptive finding of abandonment. To rebut this presumption, appellant claims he contacted appellee concerning L.M. once he was at CTF and making progress with his sobriety. Appellant attributed his lack of contact with appellee to his brief hospitalization, incarceration and substance abuse.

{¶ 30} We find the reasons offered by appellant do not rebut the presumption that he abandoned L.M. Case law supports our finding. *See, e.g., In re B.C.M.*, 9th Dist. Lorain No. 05CA0001, 2005-Ohio-1818, ¶ 8 (mother's claim that she failed to visit the child because she was using drugs was insufficient to rebut a presumption of abandonment); *In re Katrina T.*, 6th Dist. Sandusky No. S-03-024, 2004-Ohio-3164, ¶ 16 (mother's messages to caseworker that she wanted to visit the children were insufficient to rebut presumption of abandonment when mother did not leave her telephone number

9.

and failed to appear for scheduled visits); *In re L.D.*, 12th Dist. Clinton No. CA2004-03-007, 2004-Ohio-4000, ¶ 21 (father's three telephone calls and one visit to the agency during the time he had no contact with child did not rebut presumption of abandonment).

{¶ 31} We further find there was clear and convincing evidence to support the trial court's finding that appellant legally abandoned L.M. by failing to have contact with L.M. for 90 days. Accordingly, appellant's second assignment of error is not well-taken.

**First Assignment of Error**

{¶ 32} In the first assignment of error, appellant asserts the trial court's finding that appellee made reasonable efforts to reunify the family was not supported by clear and convincing evidence. Appellant claims he demonstrated progress with his sobriety but was not offered case plan services after L.M. was born.

{¶ 33} "[E]xcept for some narrowly defined statutory exceptions, the state must make reasonable efforts to reunify the family before terminating parental rights." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 4. Under R.C. 2151.419(A)(2)(d), the agency need not make reasonable efforts to reunify the family if certain circumstances exist, including if the parent from whom the child was removed abandoned the child. *Id.* at ¶ 34.

{¶ 34} Here, the trial court found appellant had abandoned L.M. Thus, appellee was under no duty to use reasonable efforts to reunify the family and was not required to prove reasonable efforts to reunify the family at the hearing on the motion for permanent custody. Likewise, it was not necessary for the trial court to make a finding that appellee made reasonable efforts to reunify appellant with L.M. Nevertheless, the trial court did

10.

make a reasonable efforts finding. We conclude it is irrelevant whether there is an error or not with the trial court's finding, given the determination that appellant abandoned L.M. Accordingly, appellant's first assignment of error is not well-taken.

{¶ 35} On consideration whereof, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs of this appeal are assessed to appellant pursuant to App.R. 24. The clerk is ordered to serve all parties with notice of this decision.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                    _____
                                                    JUDGE
Arlene Singer, J.

                                            _____
James D. Jensen, P.J.                              JUDGE
CONCUR.

                                            _____
                                                    JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.