[Cite as *In re L.H.*, 2023-Ohio-952.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE: L.H. & L.H.

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. Patricia A. Delaney, J.
Hon. Andrew J. King, J.

Case Nos. 2022 CA 00094 & 2022 CA 00095

O P I N I O N

CHARACTER OF PROCEEDINGS: Appeal from the Licking County Court of Common Pleas, Juvenile Division, Case Nos. F2019-0660 & F2019-0664.

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: March 23, 2023

APPEARANCES:

For Plaintiff-Appellee State of Ohio

JENNY WELLS
Licking County Prosecuting Attorney

KENNETH W. OSWALT
Assistant Licking County
Prosecuting Attorney
20 S. Second Street – 4th Floor
Newark, Ohio 43055

For LCJFS

ROBERT ABDALLAH, ESQ.
20 South Second Street – 4th Floor
Newark, Ohio 43055

For Father - H.H.

JERMAINE L. COLQUITT
33 W. Main Street
Newark, Ohio 43055

Guardian ad Litem

CEDRIC COLLINS
P.O. Box 564
Pickerington, Ohio 43147

For Mother – T.T.

RUTHELLEN WEAVER
542 S. Drexel Avenue
Bexley, Ohio 43209

*Hoffman, P.J.*

{¶1} In Licking App. Nos. 2022 CA 00094 and 2022 CA 00095, appellant H.H. ("Father") appeals the October 3, 2022 Opinion/Judgment Entry entered by the Licking County Court of Common Pleas, Juvenile Division, which overruled Father's objections to the magistrate's February 24, 2022 decision, adopted said decision as order of the court, terminated Father's parental rights with respect to his two minor child ("Child 1" and "Child 2," individually; "the Children," collectively), and granted permanent custody of the Children to appellee Licking County Job and Family Services ("LCJFS").

STATEMENT OF THE CASE AND FACTS

{¶2} Father and T.T. ("Mother") are the biological parents of the Children.[1] LCJFS began its involvement with the family in November, 2019, after Mother and Child 2 tested positive for methamphetamine at Child 2's birth. LCJFS had additional concerns regarding Mother's unstable mental health, her inability to meet the basic needs of the Children, and Father's incarceration.

{¶3} On November 22, 2019, the trial court issued an emergency ex parte order of removal of Child 2. On November 25, 2019, LCJFS filed five complaints, one alleging Child 2 was abused and dependent, and the other four alleging Child 1 and three other siblings were dependent.[2] Following an emergency shelter care hearing on November 25, 2019, Child 1 and Child 2 were placed in the temporary custody of LCJFS. The three other siblings were placed in the temporary custody of their biological father. The trial court appointed Attorney Cedric Collins as Guardian ad Litem ("GAL") for the Children.

---

[1] Mother is not a party to this Appeal.
[2] The three other siblings are not subject to this Appeal.

**{¶4}** Following an uncontested adjudicatory hearing on January 30, 2020, the trial court found Child 1 to be dependent and Child 2 to be abused and dependent, and immediately proceeded to disposition. The trial court ordered the Children be placed in the temporary custody of LCJFS.  LCJFS filed a motion for permanent custody on October 20, 2020.  After delays due to the COVID-19 pandemic and service issues, the motion came on for final hearing on November 1 and 3, 2021.

**{¶5}** The following evidence was presented at the hearing.

**{¶6}** Michele Kennedy, currently an ongoing supervisor with LCJFS, testified she was the ongoing social worker assigned to the family from December 13, 2019, until October 6, 2020.  Kennedy developed a case plan with the goal of reunification for the family. Father's case plan required him to establish paternity and participate in programs available at the correctional facility to address his history of criminal behavior and instability, including, inter alia, undergoing substance abuse and mental health assessments and follow any treatment recommendations, parenting education, and employment and educational services.

**{¶7}** Kennedy was unable to review the case plan with Father due to his incarceration.  Father was incarcerated at Noble Correctional Institution after he was convicted of attempted aggravated robbery and weapons under disability.  Father was incarcerated throughout the pendency of the case and had a tentative release date of August 16, 2023.

**{¶8}** While Kennedy was assigned to the family, Father mailed her three letters, one on December 24, 2019, one on April 6, 2020, and one on May 4, 2020.  The December 24, 2019 letter was in response to a correspondence Kennedy sent to Father

advising him she was the ongoing social worker assigned to the family and explaining her role as such. In the December 24, 2019 letter, Father asked Kennedy to look into his brother, L.W., for placement of the Children. Kennedy attempted to contact L.W. by telephone, but did not receive a response of any kind in return. In his April and May, 2020 letters, Father inquired about the Children and asked that the Children be returned to Mother. Father's paternal relative, K.H., contacted Kennedy about placement of the Children. However, due to K.H.'s personal history of having her own children permanently removed from her custody, LCJFS would not consider her for placement of the Children.

{¶9} Rebecca Inboden testified she was assigned as the ongoing social worker for the family on October 6, 2020, after Kennedy was promoted to a supervisory role within LCJFS. The case plan concerns, goals, and objectives remained unchanged. Inboden indicated Father did not have contact with the Children at any point while she was assigned to the family. Kelsey Weisenstein testified she was assigned as the ongoing social worker for the family on September 1, 2021, after Inboden left LCJFS. Weisenstein reviewed the case plan, but made no changes thereto.

{¶10} The GAL testified the Children are doing very well in their foster placement. The GAL noted Child 1 is "really starting to excel." Transcript of Proceedings, Vol. II at 364. The GAL explained Child 1 had speech difficulties when he was initially removed from the home, but has made a lot of progress since being placed in foster care. Child 2 is meeting his milestones. The GAL opined it was in the Children's best interest to grant permanent custody to LCJFS.

{¶11} Father was called as if on cross-examination. Father stated he was currently incarcerated and expected to be released in August, 2023. Father wished to

have the Children returned to Mother. Father indicated he speaks with Mother often, however, he was unaware Mother was abusing illegal substances or had a history of drug use. Father did not know if Mother was currently employed. On direct examination, Father indicated he had completed an intentional living program and was participating in a victim awareness program. Father completed the school for business management and was in the school of carpentry at the time of the final hearing. Father was on a waitlist for parenting classes. Father stated he and Mother are "not bad people," but they both had "made bad choices in life." Tr., Vol. I at 60. Father added he and Mother "love our kids dearly." *Id.*

**{¶12}** The magistrate issued her decision on February 24, 2022, recommending Father's parental rights be terminated and permanent custody be granted to LCJFS. Father filed objections to the magistrate's decision on March 9, 2022. Via Opinion/Judgment Entry filed October 3, 2022, the trial court overruled Father's objections and adopted the magistrate's decision as order of the court. The trial court found the Children cannot or should not be placed with Father within a reasonable time, Father had abandoned the Children, and granting permanent custody to LCJFS was in the Children's best interest.

**{¶13}** It is from this judgment entry, Father appeals.

**{¶14}** In Licking App. Nos. 2022 CA 00094 and 2022 CA 00095, Father raises the following identical assignment of error:

THE TRIAL COURT'S DECISION GRANTING PERMANENT CUSTODY OF [THE CHILDREN] TO LCDJFS IS NOT SUPPORTED BY

CLEAR AND CONVINCING EVIDENCE. THE AGENCY DID NOT PROVE THAT [THE CHILDREN] CANNOT OR SHOULD NOT BE PLACED WITH PARENTS WITHIN A REASONABLE TIME, AND DID NOT PROVE THAT GRANTING THE MOTION WAS IN THE CHILDREN'S BEST INTEREST.

{¶15} These cases come to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

LICKING APP. NO. 2022 CA 00094

I

LICKING APP. NO. 2022 CA 00095

I

{¶16} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.* (1978), 54 Ohio St.2d 279.

{¶17} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long term foster care.

**{¶18}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶19}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶20}** If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

*R.C. 2151.414(E)*

**{¶21}** Father argues the trial court's findings he "failed continuously and repeatedly to substantially remedy the conditions causing [the Children] to be placed outside [the Children's] home," R.C. 2151.414(E)(1), and "demonstrated a lack of commitment toward [the Children] by failing to regularly support, visit, or communicate with [the Children] when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for [the Children]," R.C. 2151.414(E)(4), were not supported by clear and convincing evidence.

**{¶22}** We note the aforementioned findings by the trial court relate to Mother, not Father. Because the trial court's R.C. 2151.414(E)(1) and R.C. 2151.414(E)(4) findings pertain to Mother and not Father, we need not address Father's arguments such findings as to him were not supported by clear and convincing evidence. Father further asserts the trial court's findings with respect to Mother are also not supported by clear and convincing evidence.

**{¶23}** As a general rule, a party ordinarily cannot appeal an alleged violation of another party's rights. However, "[a]n appealing party may complain of an error committed against a nonappealing party when the error is prejudicial to the rights of the appellant." *In re Smith*, 77 Ohio App.3d 1, 13, 601 N.E.2d 45 (6th Dist. 1991). Accord, *In re Hiatt*, 86 Ohio App.3d 716, 721, 621 N.E.2d 1222 (4th Dist. 1993). In other words, an appellant may complain of an error committed against a non-appealing party when the error injuriously affects the appellant.

**{¶24}** Assuming, arguendo, Father has standing to challenge the trial court's findings in support of the terminations of Mother's parental rights, we find Father has not

demonstrated the trial court erred. The record is replete with evidence Mother failed to make significant progress on her case plan. Mother had on-going mental health and substance abuse issues, repeatedly tested positive for methamphetamine and amphetamine, failed to complete any substance abuse treatment program, abused methamphetamine while pregnant with her sixth child during the pendency of the proceedings, and, overall, was unwilling to utilize the case plan services provided. Accordingly, we find Father's arguments on behalf of Mother lack merit.

**{¶25}** Father also contends LCJFS did not engage in reasonable case planning or make diligent efforts to facilitate reunification. Father explains LCJFS refused to facilitate visitation between him and the Children, noting the magistrate ordered no visitation between Father and the Children and indicated the issue could be addressed upon his release from incarceration. Father adds LCJFS failed to review the case plan with him. Father submits the trial court, nonetheless, blamed him for not having a relationship with the Children.

**{¶26}** Father's own actions resulted in his incarceration and, thus, his inability to visit the Children. "Reasonable efforts" does not mean "all available efforts." *In re J.B.*, 8th Dist. Cuyahoga No. 109039, 2020-Ohio-3675, ¶ 21 (Internal quotations and citation omitted). In determining whether reasonable efforts were made, "the child's health and safety shall be paramount." R.C. 2151.419(A)(1). The Children were both under the age of three at the time of the filing of the motion for permanent custody. We do not believe visitation at a correctional facility would be appropriate.

**{¶27}** The trial court found the Children could not or should not be placed with Father within a reasonable time as he had abandoned the Children, pursuant to R.C.

2151.414(E)(10), and he was "incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and [would] not be available to care for [the Children] for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing," pursuant to R.C. 2151.414(E)(12). Father does not challenge the trial court's R.C. 2151.414(E)(10) and R.C. 2151.414(E)(12) findings. Nonetheless, upon review of the entire record, we find such findings were supported by clear and convincing evidence.

*BEST INTEREST*

**{¶28}** "The discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of the child should be accorded the utmost respect, given the nature of the proceeding and the impact that court's determination will have on the lives of the parties concerned." *In re Mauzy Children*, 5th Dist. Stark No. 2000CA00244, 2000 WL 1799973, citing *In re Awkal*, 85 Ohio App.3d 309, 642 N.E.2d 424 (8th Dist. 1994).

**{¶29}** When determining the best interest of a child pursuant to R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the custodial history of the child, the interaction and interrelationships of the child, the child's wishes, the need for permanence in the child's life, and whether any of the factors set forth in R.C. 2151.414(E)(7) to (11) apply to the facts of the case. R.C. 2151.414(D)(1); *In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11. R.C. 2151.414(E)(10), "[t]he parent has abandoned the child," is one of the factors set forth in R.C. 2151.414(E)(7) to (11) and applies to the facts of this case.

**{¶30}** R.C. 2151.011(C) defines the term "abandonment" as follows:

For the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days.

**{¶31}** This provision creates a presumption of abandonment, which may be rebutted. *In re S.B.*, 183 Ohio App.3d 300, 2009-Ohio-3619, 916 N.E.2d 1110.

**{¶32}** The record establishes Father was incarcerated at the time the Children were removed from Mother's care in November, 2019, and remained so as of November 3, 2021, the last day of the hearing on LCJFS's motion for permanent custody. Father's last contact with Child 1 was in August, 2019. Father had never met Child 2. In 2020, Father sent birthday and Christmas cards to the Children. Father did not have any contact with the Children from January 1, 2021, through November 3, 2021, well over the period of 90 days proscribed in R.C. 2151.011(C).

**{¶33}** The record further demonstrates the Children are together in the same foster home with their sibling who was born during the pendency of this matter. The Children are doing well and all of their needs are being met. At the time of removal, Child 1 was 15 months old and was non-verbal. The foster parents have engaged Child 1 in speech and occupational therapy. Child 1 has made significant progress and now speaks in full sentences. Child 1 was diagnosed with reactive attachment disorder and displays aggressive behaviors. The foster parents have engaged him in behavioral therapy and Child 1 is making progress. The Children are bonded with each other and with their foster parents. The foster parents wish to adopt the Children. There is no bond between Father

and the Children. The GAL recommended permanent custody of the Children be granted to LCJFS. Further, the Children need a legally secure placement and such cannot be achieved without a grant of permanent custody to LCJFS.

**{¶34}** Based upon the foregoing and the entire record in this matter, we find the trial court's findings the Children could not or should not be placed with Father within a reasonable time and it was in the Children's best interest to grant permanent custody to LCJFS were not against the manifest weight of the evidence.

**{¶35}** Father's sole assignments of error in Licking App. Nos. 2022 CA 00094 and 2022 CA 00095 are overruled.

**{¶36}** The judgment of the Licking County Court of Common Pleas, Juvenile Division, is affirmed.

By: Hoffman, P.J.
Delaney, J. and
King, J. concur