[Cite as *In re S.G.*, 2022-Ohio-1967.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN RE: S.G., JR. | JUDGES:<br>Hon. Earle E. Wise, Jr., P.J.<br>Hon. William B. Hoffman, J.<br>Hon. Patricia A. Delaney, J.<br><br>Case Nos. 2021CA00136 &<br>2021CA00137<br><br>O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Stark County Court of Common Pleas, Family Court Division, Case No. 2020JCV00344 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | June 9, 2022 |
| APPEARANCES: | |

For Appellee

BRANDON J. WALTENBAUGH
JAMES B. PHILLIPS
Stark County Job and Family Services
402 – 2nd Street, S.E.
Canton, Ohio 44702

For Appellant (Mother – Elizabeth Burgy)

TY GRAHAM
4450 Belden Village Street, N.W.
Suite #703
Canton, Ohio 44718

For Appellant (Father- Shawn Guy)

DEAN L. GRASE
700 Courtyard Centre
116 Cleveland Avenue, N.W.
Canton, Ohio 44702

*Hoffman, J.*

{¶1}    In Stark App. No. 2021CA00136, appellant Shawn Guy ("Father") appeals the November 3, 2021 Judgment Entry entered by the Stark County Court of Common Pleas, Family Court Division, which terminated his parental rights, privileges, and responsibilities with respect to his minor child ("the Child") and granted permanent custody of the Child to appellee Stark County Department of Job and Family Services ("SCJFS").    In Stark App. No. 2021CA00137, appellant Elizabeth Burgy ("Mother") appeals the same judgment entry with respect to the termination of her parental rights, privileges, and responsibilities as to the Child.

## STATEMENT OF THE CASE AND FACTS

{¶2}    Mother and Father are the biological parents of the Child.  SCJFS became involved with the family on a non-court voluntary basis in November, 2019, shortly after the Child's birth due to concerns about Mother's mental health at the time of delivery and Parents' ability to care for the Child.  On April 17, 2020, SCJFS filed a Complaint, alleging the Child was dependent and neglected and requesting temporary custody of the Child be awarded to SCJFS.  On the same day, the Child was placed in the immediate shelter care custody of SCJFS.

{¶3}    The trial court conducted an emergency shelter care hearing on April 20, 2020.  Parents stipulated to a finding of probable cause for the issuance of the emergency shelter care order and placement of the Child in the shelter care custody of SCJFS.  The trial court found probable cause and awarded temporary custody of the Child to SCJFS.  The trial court ordered Parents to undergo psychological evaluations.  The trial court granted Parents supervised visits with the Child.

{¶4} Via Entry filed May 1, 2020, the trial court appointed Tom Caldwell as the Court Appointed Special Advocate for Children ("CASA")/Guardian ad Litem ("GAL") for the Child. The trial court conducted an adjudicatory hearing on July 10, 2020. SCJFS moved to delete the allegations of neglect after Parents stipulated to a finding of dependency. The trial court deleted the allegations of neglect, found the Child to be dependent, and immediately proceeded to disposition. The trial court ordered the Child remain in the temporary custody of SCJFS. The trial court conducted review hearings on October 9, 2020, and March 12, 2021, and maintained the status quo each time.

{¶5} On March 17, 2021, SCJFS filed a motion for permanent custody. SCJFS filed an amended motion for permanent custody on June 11, 2021. Parents were properly served with the original and amended motions. Father filed a motion to extend temporary custody on August 10, 2021, and a motion to continue on August 27, 2021. The matter proceeded to hearing on the motion for permanent custody, as amended, on August 30, 2021. Father withdrew his motion to continue at the commencement of the hearing.

{¶6} The following evidence was adduced at the hearing:

{¶7} Chelsea Weigand, the ongoing SCJFS caseworker assigned to the family, testified SCJFS's initial concern centered around Mother's mental health while she was giving birth and subsequently Parents' capabilities to care for the Child. SCJFS worked with the family on a non-court voluntary basis from November, 2019, until April, 2020. The Child was removed from Parents' home in April, 2020, because he was not gaining weight and there was no improvement after he was placed on a high-calorie formula. The Child was admitted to Akron Children's Hospital and immediately began to gain weight. The Child was diagnosed with inorganic failure to thrive. SCJFS also had concerns

regarding the poor condition of the home and the intellectual limitations of Parents and their parenting skills.

{¶8}    Mother's case plan required her to complete a parenting evaluation, which was initially ordered through Lighthouse Family Center ("Lighhouse").  Mother had an initial appointment at Lighthouse, but Father, who had brought Mother to the appointment, became so disruptive both Father and Mother were asked to leave the premises.  Mother completed her parenting evaluation at Melymbrosia Associates.  The evaluator recommended Mother undergo comprehensive mental health treatment and complete a parenting program, specifically Goodwill Parenting, which was part of Mother's original case plan.  The evaluator did not recommend unsupervised visits until Mother successfully completed a parenting program and was able to demonstrate an understanding of the Child's needs.  Mother did not successfully complete Goodwill Parenting.

{¶9}    Mother engaged in mental health treatment through Phoenix Rising and maintained consistent attendance.  Weigand was unable to obtain recent records or speak to anyone at Phoenix Rising regarding Mother's progress.  Weigand explained Mother signed the appropriate releases, but Phoenix Rising did not provide the records or return Weigand's calls.

{¶10} Parents were required to obtain and maintain stable housing.  Weigand visited the home in February or March, 2021, and did not have any concerns regarding the safety of the home.  However, Weigands's supervisor instructed her not to return to the home after her initial visit due to Father's verbal aggression toward her.  Father's

verbal aggression, which included name calling, swearing, and cursing had been an ongoing issue for SCJFS staff.

**{¶11}** Father's case plan required him to complete a parenting evaluation through Lighthouse. However, because Father had become so disruptive at Mother's appointment at Lighthouse, SCJFS amended his case plan to have the parenting evaluation completed through Melymbrosia. The evaluator recommended Father undergo mental health treatment to regulate his emotions and complete a parenting program through Goodwill. The evaluator recommended Father have only supervised visits until he successfully completed a parenting program and demonstrated his ability to understand and meet the Child's needs.

**{¶12}** Father refused to attend the Goodwill Parenting Program. Father also refused to engage in mental health treatment at Phoenix Rising. From early March through July, 2021, Father did not actively participate in the case plan. Father did not visist with the Child during this time. On March 4, 2021, Father advised Weigand he was at an undisclosed location in New York and any further communication should be relayed through his attorney. Weigand explained Father had two active warrants pending during this time period. The two outstanding warrants were for charges of disseminating matter harmful to a juvenile and telephone harassment. Father was arrested on the warrants, spent some time in jail, and upon his release from jail resumed visits with the Child on July 8, 2021.

**{¶13}** Father had an extensive criminal history, including domestic violence, assault, and violations of protection orders. Father's aggressive behavior with SCJFS workers, supervisors, program administrators, and executive directors was documented

throughout the life of the case. Mother did not recognize Father's aggression, minimized his behavior, and did not hold him responsible. Weigand noted, throughout the pendency of the case, SCJFS continued to have the same concerns with Parents, especially Father. Father had not shown any true change in his ability to regulate his emotions.

{¶14} Weigand indicated Parents were consistent with visits with the Child. Parents brought food and toys as well as a diaper bag filled with necessary items. However, Parents failed to see potential dangers to the Child. For example, Parents did not cut up food into appropriately sized bites and allowed the Child to bounce on a chair while holding a fork. Parents demonstrated a lack of knowledge regarding the development of a child. Parents were able to understand modeled behavior, but were unable to maintain the behavior during the next visit.

{¶15} Dr. Steven Dean with Meylmbrosia testified he conducted the psychological evaluations of Mother and Father. To evaluate Mother, Dr. Dean interviewed her and administered several psychological tests, including the Wechsler Adult Intelligence Scale - 4th Edition, the Minnesota Multiphasic Personality Inventory-II, the Millon Clinical Multiaxial Inventory-III, and a parenting stress index. Dr. Dean indicated Mother had a history of trauma, which included abusive relationships and dependency. Mother's IQ was 81, placing her in the low average range. Dr. Dean suspected Mother would have some issues with learning given her trouble with concentration and attention. Dr. Dean diagnosed Mother with persistent depressive disorder, noting she would periodically struggle with depression. Dr. Dean recommended Mother continue with medication for depression and anxiety prescribed by her doctor, continue with therapy, and complete a parenting program.

**{¶16}** Dr. Dean also conducted Father's psychological evaluation. Dr. Dean administered several psychological tests, including the Wechsler Adult Intelligence Scale - 4th Edition, the Minnesota Multiphasic Personality Inventory-II, the Millon Clinical Multiaxial Inventory-III, and a parenting stress index. Dr. Dean stated Father's IQ "would be in the what is considered an intellectual disability in the mild range" and he would not be able to independently parent. Transcript of Aug. 30, 2021 Proceedings at 57. The results of Father's psychological tests were either not valid or of questionable validity. Dr. Dean had concerns about Father's ability to parent if his pattern of emotional deregulation continued. Dr. Dean recommended Father complete a Goodwill home-based parenting program due to his learning difficulties, undergo therapy for his emotional deregulation and impulsiveness, and have only supervised visits with the Child.

**{¶17}** Phillip Heagerdy, a licensed social worker at Melymbrosia, testified SCJFS referred Father to the anger management program at Melymbrosia. Heagerdy worked with Father on his anger management off-and-on since May 5, 2020. Father did not engage in therapy between March, and July, 2021, due to the active warrants for his arrest. Heagerdy noted Father's issues with anger and emotion control "remain and will probably remain for a good period of time" as he "has had problems with managing his emotions since he was a little child." Tr. At 75. On cross-examination, Heagerdy agreed with Dr. Dean's recommendation Father complete a home-based parenting class.

**{¶18}** Kelsey Kiggans, a parenting instructor and family coach with Goodwill Industries, testified Mother was involved in a parenting skills training program. Mother was involved in the program from December 14, 2020, through February 19, 2021. Kiggans was aware of Mother's cognitive limitations and indicated accommodations were

offered and provided to Mother.   Mother completed zero out of four individual goals. Mother was unwilling to accept responsibility for the concerns which led to the removal of the Child from her care and completely denied SCJFS's concerns for her ability to care for the Child.   Mother was adamant she had no role in the Child's failure to thrive. Although Mother admitted to domestic violence in the home involving Father and Father's brother in the presence of the Child, Mother subsequently refused to acknowledge any of those concerns when asked to provide more difficult details.

**{¶19}** Kiggans stated Mother was unable to demonstrate her knowledge of the Child's developmental needs or provide items to tend to those needs.  Kiggans repeatedly had to encourage Mother to engage in appropriate play with the Child.   Mother did not retain the information she had been given and the modeling she had been shown. Kiggans did not believe Mother could safely parent the Child and recommended Mother not have unsupervised visits.

**{¶20}** Chelsea Weigand testified during the best interest portion of the hearing. The Child has no known developmental or medical issues.   The Child has been in the same foster home since his initial removal.  The Child is bonded with his foster family and the foster parents are willing to adopt the Child.  Weigand expressed her belief the benefit of permanent custody outweighed any harm which might be caused by breaking the parental bond.  She opined it was in the Child's best interest to grant permanent custody to SCJFS.  Weigand did not believe a six-month extension of temporary custody would benefit Parents due to their intellectual limitations.  Weigand added Father's emotional regulation presents a significant risk of harm to the Child.   On cross-examination,

Weigand explained Parents' intellectual disabilities impact their parenting ability and their ability to safely parent the Child.

**{¶21}** Via Judgment Entry filed November 3, 2021, the trial court terminated Parents' parental rights, privileges, and responsibilities as to the Child. The trial court found the Child could not and should not be placed with Parents within a reasonable time. The trial court also found Father had abandoned the Child by failing to visit or maintain contact with the Child for more than 90 days. The trial court further found granting permanent custody to SCJFS was in the Child's best interest. The trial court also issued Findings of Fact and Conclusions of Law on November 3, 2021.

**{¶22}** It is from this judgment entry Parents separately appeal.

**{¶23}** In Stark App. No. 2021CA00136, Father raises the following assignments of error:

I. PLAINTIFF/APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE AS EVIDENCE TO REFUTE SCDJFS'S REASON FOR INITIAL REMOVAL OF THE CHILD WAS IN POSSESSION OF TRIAL COUNSEL BUT WAS NOT OFFERED FOR ADMISSION AS AN EXHIBIT TO THE COURT.

II. PLAINTIFF/APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE AS SCDJFS'S REASON FOR THE INITIAL REMOVAL OF THE CHILD WAS SUPPORTED ONLY BY HEARSAY TESTIMONY FROM THE CASEWORKER WHICH WAS NOT OBJECTED TO.

III. SCDJFS [SIC] FAILURE TO OFFER PLAINTIFF/APPELLANT A PARENTING CLASS THAT REASONABLE [SIC] ACCOMODATED [SIC] HIS DISABILITY CONSTITUTES PLAIN ERROR.

IV. THE TRIAL COURT'S FINDING THAT PLAINTIFF/APPELLANT HAD ABANDONED THE CHILD WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

V. THE TRIAL COURT'S DECISION DENYING PLAINTIFF/APPELLANT'S MOTION TO EXTEND TEMPORARY CUSTODY PURSUANT TO O.R.C. 2151.415 WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶24} In Stark App. No. 2021CA00137, Mother raises the following assignments of error:

I. THE TRIAL COURT'S FINDINGS APPELLANT COULD NOT BE REUNIFIED WITH HER CHILD WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II. APPELLANT COULD REMEDY THE CONDITIONS OUTLINED IN HER CASE PLAN AND ACCOMPLISH REUNIFICATION WITH AN EXTENSION OF TIME.

III. THE TRIAL COURT ERRED IN FINDING APPELLEE MADE REASONABLE AND DILIGENT EFFORTS TO PREVENT THE NEED FOR

PLACEMENT AND/OR MAKE IT POSSIBLE FOR THE CHILD TO RETURN HOME.

IV. THE TRIAL COURT'S JUDGMENT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶25} These cases come to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

FATHER

I, II

{¶26} In his first and second assignments of error, Father raises claims of ineffective assistance of counsel. Specifically, Father contends trial counsel was ineffective for failing 1. to offer evidence to refute SCJFS's reason for the initial removal of the Child from Parents' home; and 2. to object to hearsay testimony from the caseworker at the adjudicatory hearing regarding the reason for the initial removal of the Child.

{¶27} "A parent is entitled to the effective assistance of counsel in cases involving the involuntary termination of his or her parental rights." *In re B.J. & L.J.*, 12th Dist. Warren Nos. CA2016-05-036 and Warren Nos. CA2016-05-038, 2016-Ohio-7440, ¶ 68. This is because "parental rights involve a fundamental liberty interest, procedural due process, which includes the right to effective assistance of counsel * * *." *In re Tyas*, 12th Dist.

Clinton No. CA2002-02-010, 2002-Ohio-6679, ¶ 4, citing *In re Heston*, 129 Ohio App.3d 825, 827, 719 N.E.2d 93 (1998).

**{¶28}** "In permanent custody proceedings, where parents face losing their children, we apply the same test as the test for ineffective assistance of counsel in criminal cases." *In re E.C.*, 3d Dist. Hancock No. 5-15-01, 2015-Ohio-2211, ¶ 40.

**{¶29}** To prove an allegation of ineffective assistance of counsel, an appellant must satisfy a two-prong test. First, an appellant must establish counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Second, an appellant must demonstrate he or she was prejudiced by counsel's performance. *Id.* To show he or she has been prejudiced by counsel's deficient performance, an appellant must prove, but for counsel's errors, the result of the trial would have been different. *Bradley,* at paragraph three of the syllabus.

**{¶30}** An appellant bears the burden of proof on the issue of counsel's effectiveness. *State v. Calhoun,* 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In Ohio, a licensed attorney is presumed competent. *Id.*

**{¶31}** Father's claims of ineffective assistances focus on two omissions by trial counsel at the July 10, 2020 adjudicatory/dispositional hearing.

**{¶32}** During the dispositional phase of the hearing, Attorney Beth Liggett, counsel for Father, questioned Amy Craig, the ongoing SCJFS caseworker originally assigned to the case, about the information she received from medical personnel at Akron Children's Hospital relative to the weights recorded during the Child's admission. Craig had not

reviewed the hospital records. Although Attorney Liggett had the medical records in her possession, she did not seek to have the evidence admitted. According to Father, the medical records were relevant to one of the dispositive issues as to the initial removal of the Child, i.e., inorganic failure to thrive; therefore, counsel was ineffective for failing to have the evidence admitted.

**{¶33}** At the July 10, 2020 hearing, Father stipulated to a finding of dependency. Via Decision filed July 13, 2020, the magistrate found the Child to be dependent and deleted the allegations of neglect. Father filed objections to the magistrate's decision, arguing the concerns surrounding the initial removal of the Child were not substantiated. The trial court overruled Father's objections via Judgment Entry filed September 22, 2020.

**{¶34}** In *In re Murray*, 52 Ohio St.3d 155, 556 N.E.2d 1169 (1990), the Ohio Supreme Court held:

> An adjudication by a juvenile court that a child is "neglected" or "dependent" as defined in R.C. Chapter 2151 followed by a disposition awarding temporary custody to a public children services agency pursuant to R.C. 2151.353(A)(2) constitutes a "final order" within the meaning of R.C. 2505.02 and is appealable to the court of appeals pursuant to R.C. 2501.02.
>
> *Id.* at syllabus.

**{¶35}** Accordingly, "an appeal of an adjudication order of abuse, dependency, or neglect of a child and the award of temporary custody to a children services agency pursuant to R.C. 2151.353(A)(2) must be filed within 30 days from the judgment entry

pursuant to App.R. 4." *In re H.F.*, 120 Ohio St.3d 499, 2008–Ohio–6810, 900 N.E.2d 607, ¶ 18.

**{¶36}** Father did not file an appeal from the trial court's September 22, 2020 Judgment Entry; therefore, the decision on dependency became the law of the case. In the absence of a timely appeal, this Court lacks jurisdiction to consider Father's first assignment of error. See, *In re S.C.,* 4th Dist. Pike Nos. 09CA798, 09CA799, 189 Ohio App.3d 308, 2010–Ohio–3394, ¶ 35.

**{¶37}** In his second assignment of error, Father contends trial counsel was ineffective for failing to object to hearsay testimony during the dispositional phase of the July 10, 2020 hearing. Father refers to trial counsel's failure to object to Amy Craig's testimony about the information she received from medical personnel at Akron Children's Hospital relative to the Child's weights during his admission. Craig had access to the records, but had not reviewed such before the hearing.

**{¶38}** Pursuant to R.C. 2151.35(B)(2)(b), "[t]he court may admit any evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence" at a dispositional hearing. As such, trial counsel was not ineffective for failing to object as any objection would have been overruled. *State v. Teasley*, 8th Dist. Cuyahoga No. 67819, 1995 WL 491123. Additionally, because Father did not timely appeal the trial court's adjudication of dependency, this Court lacks jurisdiction to consider Father's second assignment of error. See, also, R.C. 2151.414(B)(1) ("The adjudication that the child is an abused, neglected, or dependent child and any dispositional order that has been issued in the case under section 2151.353 of the Revised Code pursuant to the adjudication shall not be readjudicated at the hearing.")

**{¶39}** Father's first and second assignments of error are dismissed for lack of jurisdiction.

MOTHER

I

**{¶40}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.

**{¶41}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long term foster care.

**{¶42}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able

to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶43}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶44}** If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

**{¶45}** R.C. 2151.414 provides, in relevant part:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and

convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this

section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code.

{¶46} We find there was sufficient and substantial competent evidence Mother failed to remedy the problems which initially caused the removal of the Child from Parents' home and it was in the Child's best interest to grant permanent custody to SCJFS. Mother attended Goodwill Parenting, but did not successfully complete the program. She completed 0% of her individual goals and 36% of her program goals. Mother earned a certificate of non-compliance as she failed to complete even a minimal amount of the course requirements. Goodwill made many accommodations due to her cognitive limitations, however, Mother failed to demonstrate the ability to apply any skills she learned throughout the program. Even with direction, suggestions, and modeling, Mother was unwilling to change her approach to parenting. Mother was receiving mental health services at Phoenix Rising, however, despite due diligence, SCJFS was unable to obtain Mother's records and could not assess her treatment progress. There was no testimony to indicate Mother would or could remedy the problems if she was given additional time to work on her case plan.

{¶47} With respect to the best interest finding, the record established the Child has been in the same foster placement since his initial removal from Parents' home. The Child is bonded with his foster family and they with him. The Child does not experience any distress when leaving Mother following visits. The foster parents have expressed a desire to adopt the Child should SCJFS be granted permanent custody.

**{¶48}** Based upon the foregoing, we find the trial court's findings the Child could not or should not be placed with Mother within a reasonable time and it was in the Child's best interest to grant permanent custody to SCJFS were not against the manifest weight of the evidence.

**{¶49}** Mother's first assignment of error is overruled.

FATHER

III

MOTHER

II

**{¶50}** In his third assignment of error, Father argues SCJFS's failure to provide him with a parenting class which would reasonably accommodate his disability as recommended by Dr. Dean was "reversible plain error." Brief of Father at 13. In her second assignment of error, Mother asserts SCJFS did not make reasonable efforts because SCJFS did not allow her to participate in Goodwill home-based parenting program as recommended by Dr. Dean based upon Mother's learning disability and difficulty concentrating.

**{¶51}** The Ohio Revised Code imposes a duty on the part of children services agencies to make reasonable efforts to reunite parents with their children where the agency has removed the children from the home. R.C. 2151.419. "Case plans are the tools that child protective service agencies use to facilitate the reunification of families who * * * have been temporarily separated." *In re Evans*, 3d Dist. Allen No. 1-01-75, 2001 WL 1333979, *3, 2001 Ohio App. LEXIS 4809 (Oct. 30, 2001). To that end, case plans

establish individualized concerns and goals, along with the steps that the parties and the agency can take to achieve reunification. *Id.*

**{¶52}** " 'Reasonable efforts means that a children's services agency must act diligently and provide services appropriate to the family's need to prevent the child's removal or as a predicate to reunification.' " *In re H.M.K.*, 3d Dist. Wyandot Nos. 16-12-15 and Wyandot Nos. 16-12-16, 2013-Ohio-4317, ¶ 95, quoting *In re D.A.*, 6th Dist. Lucas No. L-11-1197, 2012-Ohio-1104, ¶ 30. "In determining whether the agency made reasonable efforts [pursuant to R.C. 2151.419(A)(1)] to prevent the removal of the child from the home, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute." *In re Lewis*, 4th Dist. No. 03CA12, 2003-Ohio-5262, at ¶ 16. " 'Reasonable efforts' does not mean all available efforts." *Id.* A "reasonable effort" is "* * * an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." *In re Weaver*, 79 Ohio App.3d 59, 63, 606 N.E.2d 1011 (12th Dist. 1992).

**{¶53}** As set forth in our Statement of the Case and Facts, supra, SCJFS made reasonable efforts to reunite Parents with the Child by establishing workable case plans which included services to address concerns with Mother's mental health and her parenting skills, and Father's mental health, in particular emotional regulation and anger management, and his parenting skills.

**{¶54}** Parents had participated in Goodwill home-based parenting during SCJFS's non-court voluntary involvement between November, 2019, and April, 2020. Following the filing of the Complaints, Parents were required to attend Goodwill Parenting. While Mother was involved with the parenting program, she was provided with many

accommodations, which were implemented to address her cognitive limitations. Despite direction, suggestion, and modeling by the Goodwill staff, Mother was either unwilling or unable to change her approach to parenting. Father flat-out refused to attend Goodwill Parenting.

{¶55} As stated, supra, the issue is not whether there was anything more the agency could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case. We find SCJFS's case planning and efforts were reasonable and diligent under the circumstances of this case. Accordingly, we find the trial court did not err in concluding SCJFS made reasonable efforts to reunite Parents with the Child. We further find no plain error in SCJFS's failure to provide Father with a parenting class which would reasonably accommodate his disability as there is no evidence Father would have participated in such.

{¶56} Father's third and Mother's second assignments of error are overruled.

FATHER

IV

{¶57} In his fourth assignment of error, Father maintains the trial court's finding he abandoned the Child was against the manifest weight of the evidence.

{¶58} Pursuant to R.C. 2151.414(B), "the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and * * * (b) The child is abandoned."

{¶59} R.C. 2151.011(C) defines the term "abandonment" as follows:

For the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days.

**{¶60}** This provision creates a presumption of abandonment, which may be rebutted. *In re S.B.*, 183 Ohio App.3d 300, 2009-Ohio-3619, 916 N.E.2d 1110.

**{¶61}** The evidence revealed sometime around March 4, 2021, Father contacted SCJFS caseworker Chelsea Weigand and advised her he would no longer be participating in the case or engaging in his case plan services. At the time, Father was wanted on two outstanding warrants for disseminating matter harmful to a juvenile and telephone harassment. Father fled the state of Ohio, returning in July, 2021, after he was apprehended by police and jailed. Father visited the Child on July 8, 2021.

**{¶62}** Father submits he maintained telephone contact with the Child while he out of the state. Father points to Mother's testimony indicating Father visited the Child "via the phone" during her scheduled visits. However, Mother was unable to provide specific dates or times of these calls. Weigand testified Father did not visit the Child between March 4, and July 8, 2021. She was aware of only one visit at the end of June, 2021, during which Mother phoned Father to speak with the Child. This phone call occurred more than 90 days after March 4, 2021.

**{¶63}** The trial court, as the trier of fact, was free to accept or reject any or all of the testimony of the witnesses. The trial court obviously believed Weigand's testimony on the issue of Father's abandonment of the Child. We find the trial court's finding Father

abandoned the Child was supported by clear and convincing evidence and not against the manifest weight of the evidence.

**{¶64}** Father's fourth assignment of error is overruled.

FATHER

V

**{¶65}** In his final assignment of error, Father contends the trial court erred in denying his motion to extend temporary custody as such decision was against the manifest weight of the evidence. We disagree.

**{¶66}** R.C. 2151.415(D)(1) authorizes a trial court to extend temporary custody for six months only if the court finds, by clear and convincing evidence, such an extension is in the best interest of the child and "there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension."

**{¶67}** Pursuant to R.C. 2151.415(D)(1), the juvenile court may extend the agency's temporary custody for six months if there is clear and convincing evidence (1) an extension is in the best interest of the child, (2) there has been significant case plan compliance, and (3) there is reasonable cause to believe that reunification will occur within the period of extension. The juvenile court's decision to grant or deny an extension of temporary custody is a discretionary one which will not be reversed absent an abuse of discretion. *In re A.S.*, 9th Dist. Summit No. 28743, 2017-Ohio-8984, ¶ 11. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶68}** The record belies Father's assertion he "showed amazing dedication to completing his case plan and to reunifying with his child." Brief of Father at 15. Father had minimal case plan compliance. He refused to attend Goodwill Parenting. Phillip Heagerdy, a therapist at Melymbrosia, had worked with Father on his anger management off-and-on since May, 2020. Father did not engage in therapy between March, and July, 2021, due to the active warrants for his arrest. Heagerdy noted Father's issues with anger and emotion control "remain and will probably remain for a good period of time" as he "has had problems with managing his emotions since he was a little child."

**{¶69}** Father made the decision to abscond from the state to avoid being arrested on two outstanding warrants. Father spoke with Weigand and informed her he would no longer be participating in the case or engaging in his case plan services. Father gave up a period of approximately four months during which he could have worked on his case plan. There is no evidence, let alone clear and convincing evidence, an extension would be in the Child's best interest nor is there reasonable cause to believe reunification would occur within the period of extension. We find the trial court did not abuse its discretion in denying Father's motion for an extension of temporary custody.

**{¶70}** Father's fifth assignment of error is overruled.

{¶71} The judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed.


By: Hoffman, J.

Wise, Earle, P.J.  and

Delaney, J. concur